**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

JAMES CARLO QUISENBERRY,                Civil Action No. 2:20-cv-01824

        Plaintiff,                Judge J. Nicholas Ranjan

    v.

JON T. RIDGE,
Washington County Chief Adult
Probation and Parole Officer, and
WASHINGTON COUNTY,

        Defendants.

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

AND NOW, come the Defendants, Jon T. Ridge and Washington County, by and through their attorneys, Robert J. Grimm, Esquire and the law firm of Swartz Campbell, LLC and file the following Brief in Support of their Motion to Dismiss, asserting and setting forth the following:

**I.   FACTS & PROCEDURE**

The Plaintiff, James Carlo Quisenberry (hereinafter "Mr. Quisenberry"), has filed a Complaint against the Defendants, Jon T. Ridge (hereinafter "Mr. Ridge") and Washington County (hereinafter "the County"), asserting claims pursuant to 42 U.S.C. § 1983. Mr. Quisenberry avers that Mr. Ridge "serves as the Chief Adult Probation and Parole Officer for Defendant Washington County." **Pl.'s Compl. at ¶ 8.** He further avers that the County, in respect of his claims, "acted through its agents, servants, and employees, including but not limited to Defendant Ridge and President Judge Katherine B. Emery, all of whom acted in the course and scope of their employment." **Id. at ¶ 11.**

According to the allegations set forth in the Complaint, Mr. Quisenberry was arrested on August 10, 2019, by Peters Township police officers "for an alleged bond violation" in relation

1

to a criminal case pending against him, but he insists that this arrest was made "without a valid warrant." **Id. at ¶¶ 18-19.** Specifically, Mr. Quisenberry alleges that Mr. Ridge utilized a "pre-signed warrant" provided by President Judge Emery to effectuate the arrest. **Id. at ¶¶ 23, 32.** Mr. Quisenberry contends that the use of a pre-signed warrant at the direction of Mr. Ridge constituted a violation of his rights under the Fourth Amendment to the United States Constitution (as applied to the states via the Fourteenth Amendment), because it permitted his arrest absent a requisite judicial finding of probable cause. **Id. at ¶¶ 24-25, 33-34.**

Mr. Quisenberry further contends that the use of pre-signed warrants represents a "policy, custom, or practice" attributable to the County. He characterizes Mr. Ridge and President Judge Emery as "official policymakers" of the County responsible for devising and implementing the use of pre-signed warrants as an "official policy" of the County. **Id. at ¶¶ 40-42.** In this way, he charges the County itself with violating his Fourth Amendment rights. **Id. at ¶ 42, 45.** Mr. Quisenberry demands compensatory and punitive damages, an award of attorneys' fees, and equitable relief in the form of an injunction against the continued use of pre-signed warrants.

The Complaint filed by Mr. Quisenberry omits critically important facts that the Defendants request the Court take judicial notice of at this time. As elaborated upon below, Mr. Quisenberry had been criminally charged with harassing, threatening, and stalking the Honorable Judge Valerie Costanzo of the Court of Common Pleas of Washington County. Mr. Quisenberry, as a condition of his release on a bond, was required to maintain a minimum distance of two (2) miles from Judge Costanzo and her home at all times. He violated this condition, coming within 0.4 miles of her home on or about August 10, 2019, which triggered the emergency alert ankle bracelet he was wearing. The Adult Probation Office contacted the Honorable Senior Judge Gerald Solomon—who had been assigned to Mr. Quisenberry's case— to advise him of the violation and to request his authorization of an arrest warrant. As stated on

2

the record by Judge Solomon during a bond revocation hearing conducted on August 15, 2019, Judge Solomon did indeed authorize the arrest warrant. This fact is fatal to Mr. Quisenberry's claims since the whole premise of his claims—that he was arrested without a judge issuing an arrest warrant based on probable cause—is a plainly false premise.

Mr. Ridge and the County now bring the within Motion to Dismiss. First, the Court should dismiss Mr. Quisenberry's claims against Mr. Ridge because he enjoys Eleventh Amendment immunity from suit or, alternatively, qualified immunity from suit. Second, the Court should dismiss Mr. Quisenberry's claims against the County because it is not Mr. Ridge's employer and bears no liability for his alleged actions or inactions. Finally, the Court should also dismiss Mr. Quisenberry's claims against both the County and Mr. Ridge because the arrest giving rise to his claims was a lawful arrest, based on a valid warrant, supported by probable cause.

## II. ARGUMENT IN SUPPORT OF DISMISSAL BASED ON LACK OF SUBJECT MATTER JURISDICTION (DEFENDANT JON T. RIDGE)

As a threshold matter, Mr. Quisenberry's Complaint against Mr. Ridge should be dismissed because he is entitled to sovereign immunity under the Eleventh Amendment. Federal Rule of Civil Procedure 12(b)(1) authorizes a motion challenging the propriety of a court's exercise of subject matter jurisdiction when a party invokes immunity from suit.

> A defendant may move to dismiss a civil action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack. A facial challenge is where, as here, a defendant "challenges subject matter jurisdiction without disputing the facts alleged in the complaint." In such a case, the court is required to "consider the allegations of the complaint as true." However, because "[f]ederal courts are courts of limited jurisdiction . . . [i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Immunity under the Eleventh Amendment challenges the court's subject matter jurisdiction,

3

> and thus is properly raised under Rule 12(b)(1). If the Court determines that it lacks subject matter jurisdiction, Federal Rule of Civil Procedure 12(h)(3) requires dismissal.

Lee v. Lamas, 419 F. Supp. 3d 863, 867 (E.D. Pa. 2019) (internal citations omitted).

Mr. Quisenberry has filed suit against Mr. Ridge in his capacity as "Chief Adult Probation and Parole Officer." **Pl.'s Compl. at ¶¶ 3, 8.** Mr. Quisenberry refers to Mr. Ridge as an agent and/or employee of the County, but in this regard he is fundamentally mistaken. **Id. at ¶¶ 8, 11.** Mr. Ridge, in actuality, is an employee of the Adult Probation Office, which is part of the Court of Common Pleas of Washington County, which itself comes under the umbrella of Pennsylvania's Unified Judicial System. As such, Mr. Ridge is factually and legally an employee of the Commonwealth of Pennsylvania, *not* the County. See Perez v. Borough of Berwick, 507 F. App'x 186, 189-90 (3rd Cir. 2012) (finding Columbia County did not operate Probation Department, because "Pennsylvania probation and parole departments are part of the Commonwealth's Unified Judicial District").

In light of his status as an employee of the Unified Judicial System and, therefore, of the Commonwealth of Pennsylvania, Mr. Ridge may avail himself of Eleventh Amendment sovereign immunity.[1]

> Under the Eleventh Amendment, States are immune from suits for damages by individual citizens. This immunity extends to arms of the state, such as state and county agencies which have no separate existence from the state itself. Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). The United States Court of Appeals for the Third Circuit has held that county probation and parole offices are part of Pennsylvania's judicial system which is considered an arm of the state, and are thus entitled to Eleventh Amendment immunity. Haybarger v. Lawrence County Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir.2008).

---

[1] Pennsylvania has **not** waived Eleventh Amendment sovereign immunity. See 1 Pa.C.S.A. § 2310 ("Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.).

4

Thompson v. Williams, No. 09-1432, 2013 WL 2452205, *4-*5 (W.D. Pa. June 5, 2013) (some internal citations omitted). In Thompson, this Court ruled that the Eleventh Amendment barred suit against employees of Fayette County's Department of Adult Probation and Parole, because suit against these employees was analogous to suit against a state official acting in her official capacity which "is not a suit against the official but rather a suit against the office . . . [and] no different from a suit against the State itself." Id. at *5; and see Wallace v. Powell, No. 3:09-cv-286, 2009 WL 6850318, *8 (M.D. Pa. Nov. 20, 2009) ("The probation department is an arm of the state, and its employees are state actors, making them subject to sovereign immunity.").

Clearly, Mr. Ridge is not an employee of the County. Rather, he is an employee of the Commonwealth of Pennsylvania. Mr. Quisenberry's suit, although ostensibly brought against Mr. Ridge, is actually not a suit brought against Mr. Ridge, but, instead, is a suit brought against the Commonwealth. The significance is that the suit must be dismissed by operation of sovereign immunity. Indeed, because Mr. Ridge is immune from suit at the outset, the Court is constrained to acknowledge it lacks subject matter jurisdiction with respect to him and so should dismiss Mr. Quisenberry's Complaint as against him.

In the alternative, the Court should dismiss Mr. Quisenberry's suit against Mr. Ridge on the basis of qualified immunity. A determination of whether qualified immunity exists must be made early in the litigation because "[q]ualified immunity is 'an entitlement not to stand trial or face other burdens of litigation.'" See Saucier v. Katz, 533 U.S. 194, 200 (2001). Probation officers, like police officers, are typically entitled to qualified immunity. See Presley v. Morrison, 950 F. Supp. 1298, 1304 (E.D. Pa. 1996). The United States Supreme Court has held that "government officials [including probation officers] performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Mr. Ridge did not violate Mr. Quisenberry's statutory or constitutional rights because his conduct consisted of nothing more than deploying an arrest warrant that had been signed by President Judge Emery. Use of the arrest warrant was necessitated when Mr. Ridge learned of Mr. Quisenberry's violation of the terms of his release and the consequent threat posed to Judge Costanzo. What is more, as alluded to above and elaborated upon in detail below, the warrant issued only after Judge Solomon determined that probable cause existed to support Mr. Quisenberry's arrest. For these reasons, it is clear that Mr. Ridge is entitled to qualified immunity and Mr. Quisenberry's Complaint against him should be dismissed.

### III. ARGUMENT IN SUPPORT OF DISMISSAL BASED ON FAILURE TO STATE A CLAIM (DEFENDANTS WASHINGTON COUNTY AND JON T. RIDGE)

Mr. Quisenberry's Complaint against the County should be dismissed because he is unable to state any viable claims for vicarious (i.e., *respondeat superior*) or direct liability against it. Furthermore, his Complaint as against both the County as well as Mr. Ridge should be dismissed because a valid warrant was in fact issued by a Judge of the Court of Common Pleas of Washington County for his arrest.

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion challenging the legal sufficiency of a claim and, relatedly, a claimant's entitlement to relief based thereon. In reviewing such a motion, "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the United States Supreme Court's decision in Bell Atlantic Corp. v. Twombly, dismissal of a complaint pursuant to Rule 12(b)(6) is proper where

6

the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. 550 U.S. 544 (2007). In other words, the allegations of the complaint must be grounded on adequate factual and legal bases such as to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Id. at 570. A complaint that does not establish entitlement to relief under any interpretation is properly dismissed without leave to amend. Grayson v. Mayview State Hosp., 293 F.3d 103, 106 (3d Cir. 2002).

### A. *Failure to State a Claim for Respondeat Superior Liability against the County*

Mr. Quisenberry's claims against the County are legally insufficient to the extent that they are based on the theory that Mr. Ridge is an employee of the County. As explained above, the County is not Mr. Ridge's employer, despite Mr. Quisenberry's allegations. To refer again to this Court's ruling in Thompson v. Williams, the plaintiff in that case sued not only individual employees of Fayette County's Department of Adult Probation and Parole, but also the Department itself *and* Fayette County. No. 09-1432, 2013 WL 2452205 (W.D. Pa. June 5, 2013). Fayette County argued that all claims against it should be dismissed because it did not oversee and was not responsible for the operation of the Department of Adult Probation. Id. at *6. This Court agreed, noting that all courts and associated agencies in Pennsylvania are part of the government apparatus of the Commonwealth of Pennsylvania, and are considered state, rather than municipal agencies. Id. Dispensing with the notion that *respondeat superior* could form the basis of liability, this Court stated: "Fayette County cannot be held accountable for the actions of a state entity and its agents over which it has no control." Id.

Similarly, the County cannot be vicariously or indirectly liable for any actions taken by Mr. Ridge, because the Adult Probation Office he oversees is an arm of the Unified Judicial System of the Commonwealth of Pennsylvania. The Adult Probation Office is not a local agency

7

and is not subject to the control of the County. No employees of the Adult Probation Office are employees (or agents) of the County. Therefore, Mr. Quisenberry's claims, insofar as they are dependent on any theory that an employer-employee relationship exists between Mr. Ridge and the County, must be dismissed because such a relationship simply does not exist as a matter of law.

### B. *Failure to State a Claim for <u>Monell</u> Liability against the County*

Without explicitly invoking it, Mr. Quisenberry appears to be pleading a claim based on the United States Supreme Court's decision in Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658 (1978). In order to prevail on a claim as contemplated under Monell, a plaintiff must plead and ultimately prove (1) the existence of a local government custom or policy, and (2) that local governmental employees violated the plaintiff's civil rights while acting under this custom or policy. Id. 694.

> Municipalities are subject to § 1983 liability under Monell only where the municipality itself causes a constitutional violation. . . . When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom.

Cloyd v. Delaware Cty., No. CIV.A. 14-4833, 2015 WL 1312524, at *2–3 (E.D. Pa. Mar. 23, 2015).

Mr. Quisenberry faces an insurmountable hurdle in pleading and proving a Monell claim against the County, which is this: the County neither created the custom or policy of using pre-signed warrants, nor directed or oversaw in any respect the utilization of pre-signed warrants. Mr. Quisenberry states that Mr. Ridge and President Judge Emery "were official policymakers" of the County and that their actions relative to issuing and using pre-signed warrants "represented the official policy of Defendant County." **Pl.'s Compl. at ¶¶ 40-41.** However, this

is simply not so as a matter of law.  Mr. Ridge was at all relevant times an employee of the Adult Probation Office/the Court of Common Pleas of Washington County/the Unified Judicial System of the Commonwealth of Pennsylvania.  See supra Perez v. Borough of Berwick, 507 F. App'x 186, 189-90 (3rd Cir. 2012).  Judge Emery, for her part, was also, at all relevant times, an employee of the Court of Common Pleas of Washington County/the Unified Judicial System of the Commonwealth of Pennsylvania, and so her actions cannot be imputed to the County.  See Butler v. City of Philadelphia, No. CIV. A. 11-7891, 2013 WL 5842709, at *2 (E.D. Pa. Oct. 31, 2013) ("Moreover, to the extent that plaintiff seeks to hold the City liable for the actions of the Court of Common Pleas in allegedly violating his constitutional rights, his claim fails as a matter of law because the Court is an agency of the Commonwealth. . . . [T]here is no liability on the part of the City [] for the actions of judges of the Court who are not employees or agents of the City.").

Since both Mr. Ridge and President Judge Emery were not and still are not employees of the County, it cannot be maintained that they were ever functioning as policymakers at the behest of or on behalf of the County.  Likewise, it cannot be maintained that the County bestowed upon them some authority to formulate policies or adopt customs respecting pre-signed warrants.  Furthermore, the use of pre-signed warrants was not something the County did or advocated and it is not something that any of its actual employees did or advocated.  Rather, it is something that Judge Emery and Mr. Ridge—neither of them employees of the County or officials serving in the County government—allegedly did or advocated.  Therefore, as a matter of both fact and law, Mr. Quisenberry cannot state a colorable claim against the County under Monell because no "policy, regulation, or decision officially adopted by [it] or informally adopted by [it as a matter of] custom" caused or resulted in a violation of Mr. Quisenberry's rights under the Fourth

9

Amendment. See Cloyd, 2015 WL 1312524, at *3. Consequently, Mr. Quisenberry's claims against the County must be dismissed.

### C. Failure to State Claims against the Defendants for an Unlawful Arrest

The Defendants request the Court to take judicial notice of particular facts that definitively demonstrate that Mr. Quisenberry cannot state any viable claims for relief against them. These facts were actually alluded to by Mr. Quisenberry in his Complaint, wherein he references the criminal case pending against him as well as the bond revocation hearing that occurred on August 15, 2019, following his arrest. **Pl.'s Compl. at ¶¶ 18, 22-26.** Apart from this, Federal Rule of Evidence 201 authorizes the Court—"at any stage of the proceeding"—to take judicial notice of "adjudicative facts" that are "not subject to reasonable dispute because" they are "generally known within the trial court's territorial jurisdiction" and/or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." See F.R.E. 201(b)(1)&(2). Importantly, "[a] court may consider judicially noticeable facts without converting a motion to dismiss into a motion for summary judgment." Feingold v. Graff, 516 F. App'x 223, 225 (3d Cir. 2013) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 323 (2007)).

Mr. Quisenberry was arrested in the spring of 2019 and charged with various counts of harassment, terroristic threats, and stalking, following incidents involving Judge Valerie Costanzo of the Court of Common Pleas of Washington County. **See Criminal Docket CP-63-CR-0001178-2019, attached to the Motion and marked Exhibit A.** Mr. Quisenberry was permitted to post bond and was released, with the understanding that he would comply with various conditions imposed under the terms of his release. As testified to by Mr. Ridge at the August 15, 2019 bond revocation hearing, one such condition was that Mr. Quisenberry observe and remain clear of certain "exclusionary zones," including a two (2) mile radius surrounding

Judge Costanzo's residence located in the Southpointe area southwest of Pittsburgh. **See August 15, 2019 Bond Revocation Hearing Transcript, attached to the Motion and marked Exhibit B, at p. 6.** On the evening of August 10, 2019, the "Buddi Clip" Mr. Quisenberry was wearing alerted authorities that he was at or near the Interstate 79 interchange in Southpointe. **Id.** As Mr. Ridge recounted during his testimony, this placed Mr. Quisenberry within 0.4 miles of the Judge's home—a clear violation of the "exclusionary zones" condition of his release. **Id. at pp. 8, 14.**

When notified that Mr. Quisenberry was very near the Judge's home, Mr. Ridge was naturally quite concerned for her safety, especially given his knowledge of the criminal charges pending against Mr. Quisenberry as well as his knowledge of Mr. Quisenberry's possession of several firearms. **Id. at p. 10.** Consequently, he released an arrest warrant that had been previously signed by President Judge Emery. He explained during the hearing that pre-signed arrest warrants enable law enforcement to act quickly in detaining potentially dangerous domestic violence offenders. **Id. at pp. 4-5.** The Peters Township police officers acted on the authority of this warrant in arresting Mr. Quisenberry.

The validity of the warrant is the linchpin of Mr. Quisenberry's claims against both Mr. Ridge and the County. In effect, he contends that his arrest was unlawful because it was based on a pre-signed warrant and not a warrant issued by a judge and supported by probable cause. Mr. Quisenberry's contention is fundamentally flawed. During the August 15, 2019 revocation hearing, Judge Solomon stated on the record that he had personally authorized issuance of the warrant after being advised that Mr. Quisenberry had entered a prohibited "exclusionary zone."

> [Judge Emery] pre-signed all of the warrants. I directed that the warrant be issued on Saturday night, shortly before 9:00 p.m.
> …

11

> I was told that there was a pre-signed warrant by Judge Emery. The question to me was, "Should it be issued?" I said, "Did he violate the terms?" They said that he did, so I directed that the warrant be issued.

**Id. at p. 38.** Thus, Judge Solomon attested during the hearing that he had personally authorized and issued the warrant for Mr. Quisenberry's arrest. Judge Solomon proceeded to find that Mr. Quisenberry had indeed violated the conditions of his release, leading him to revoke Mr. Quisenberry's bond and commit him to the Washington County Correctional Facility. **Id. at p. 43; and see August 15, 2019 Order of Court, attached to the Motion and marked Exhibit C.**

Notwithstanding Mr. Quisenberry's allegations to the contrary, his arrest was effectuated via a valid, lawful warrant issued by Judge Solomon upon probable cause. Judge Solomon was contacted and told that Mr. Quisenberry had violated the conditions of his release by coming within less-than one-half (1/2) mile of Judge Costanzo's home. Learning this, and being personally familiar with Mr. Quisenberry and his case, Judge Solomon forthwith issued a warrant for his arrest. Following a hearing that featured testimony and evidence presented by both the Commonwealth and Mr. Quisenberry, Judge Solomon concluded that Mr. Quisenberry had breached the terms of his release, elevating probable cause to actual cause justifying his arrest as well as subsequent revocation of bond and incarceration.

It is notable that during the August 15, 2019 hearing, Mr. Quisenberry argued that the pre-signed warrant used for his arrest was unlawful. **See Ex. B, at p. 36.** But as explained, Judge Solomon authorized the warrant upon being informed that Mr. Quisenberry had violated the terms of his release. At the hearing, Judge Solomon rejected Mr. Quisenberry's challenge to the legality of the warrant used for his arrest. After hearing all of the evidence, Judge Solomon determined that Mr. Quisenberry was indeed culpable of a bond violation, compelling him to revoke bond and to confine him to the Correctional Facility. Therefore, the Defendants submit that the issue of the legal validity of the subject warrant has been decided. Given this, Mr.

Quisenberry should be estopped from contending in the instant suit that the warrant was improper or unlawful. This serves as yet another reason that his claims against both the County and Mr. Ridge must be dismissed.

## IV. CONCLUSION

The Defendants move the Court to dismiss Mr. Quisenberry's Complaint, in its entirety and with prejudice. The Complaint should be dismissed as to Mr. Ridge as he is afforded immunity under the Eleventh Amendment and/or is entitled to qualified immunity. The Complaint should be dismissed against the County because it was not Mr. Ridge's employer and because it did not establish or enforce a policy or custom that violated any of Mr. Quisenberry's rights. Finally, the Complaint should further be dismissed against Mr. Ridge and the County because his arrest comported with the Fourth Amendment and was in every respect proper and lawful. Accordingly, Mr. Quisenberry has failed to state claims against Mr. Ridge and the County upon which relief can be granted.

WHEREFORE, the Defendants, Jon T. Ridge and Washington County, respectfully request that this Honorable Court dismiss the Plaintiff's Complaint against them, in its entirety and with prejudice.

Respectfully submitted,

SWARTZ CAMPBELL, LLC

By: /s/ Robert J. Grimm
Robert J. Grimm, Esquire
PA ID No. 55381
436 7th Ave., Floors 7 & 8
Koppers Building
Pittsburgh, PA 15219
(412) 232-9800
rgrimm@swartzcampbell.com
Attorneys for the Defendants,
Jon T. Ridge and
Washington County

**CERTIFICATE OF MEET-AND-CONFER**

I, Ryan M. Joyce, Esquire, associate to Robert J. Grimm, Esquire, hereby certify that I contacted and spoke with Plaintiff's counsel, Wayne A. Ely, Esquire, by telephone on Friday, January 22, 2021, for the purpose of meeting and conferring with Plaintiff's counsel in a good-faith effort to identify perceived legal deficiencies in Plaintiff's Complaint. Despite this good-faith effort, the undersigned and Plaintiff's counsel were unable to resolve their differences and agreed to litigate the same.

                                            SWARTZ CAMPBELL, LLC

                                            By:    /s/Ryan M. Joyce
                                                         Ryan M. Joyce, Esquire
                                                         PA ID No. 309053

## CERTIFICATE OF SERVICE

I, Robert J. Grimm, Esquire, hereby certify that true and correct copies of the foregoing **Defendants' Brief in Support of Motion to Dismiss** have been served this 27th day of January, 2021, by Regular U.S. Mail and ECF Filing, to:

>Wayne A. Ely, Esquire
>225 Lincoln Highway
>Building A, Suite 150
>Fairless Hills, PA 19030
>**(Attorney for Plaintiff)**

>SWARTZ CAMPBELL, LLC
>
>By: /s/ Robert J. Grimm
>Robert J. Grimm, Esquire
>Attorneys for the Defendants,
>Jon T. Ridge and
>Washington County