IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES CARLOS QUISENBERRY, | ) |
| Plaintiff, | ) 2:20-cv-1824-NR |
| v. | ) |
| JON T. RIDGE, Washington County Chief Adult Probation and Parole Officer, and JUDGE KATHERINE B. EMERY, | ) |
| Defendants. | ) |

# MEMORANDUM ORDER

Plaintiff James Carlos Quisenberry was arrested on August 10, 2019, by three Peters Township police officers. They arrested him for an alleged bond violation related to a criminal case then pending against him. Mr. Quisenberry claims that the arrest was made without a valid warrant because Defendant Jon T. Ridge, who currently serves as the Chief Adult Probation and Parole Officer for Washington County, used a "pre-signed warrant" provided by Defendant Judge Katherine Emery of the Court of Common Pleas of Washington County. Mr. Quisenberry contends that the use of a pre-signed warrant violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Mr. Quisenberry brings claims against Mr. Ridge and Judge Emery under 42 U.S.C. § 1983.

This Court previously dismissed Mr. Quisenberry's claims against Mr. Ridge and Judge Emery, without prejudice. ECF 20. In the prior version of his complaint, Mr. Quisenberry asserted claims against them in their "official capacities," but this Court found that such claims were barred by the doctrine of sovereign immunity

under the Eleventh Amendment.¹ *Id.* The Court, however, granted Mr. Quisenberry leave to file a second amended complaint to make clear whether he also intended to bring claims against Defendants in their individual capacities, which would not be barred by sovereign immunity. *See id.* Mr. Quisenberry filed a second amended complaint clarifying the nature of his claims, but Defendants have once again moved to dismiss.

In his motion, Mr. Ridge argues that Mr. Quisenberry's claims against him are still official-capacity claims "masquerading" as individual-capacity claims. He also argues that, even if they are individual-capacity claims, they should still be dismissed because he is entitled to qualified immunity. Judge Emery, on the other hand, assumes that Mr. Quisenberry is bringing individual-capacity claims but argues that it does not matter because judicial immunity prohibits any suit for monetary damages brought against her.

After careful consideration, and applying the familiar standard of review for a Rule 12(b)(6) motion,² the Court will deny Mr. Ridge's motion without prejudice, but grant Judge Emery's motion.

---

¹ The Court also dismissed all claims for prospective relief and those brought against Washington County. ECF 20, pp. 2-5. Mr. Quisenberry has abandoned those claims in his second amended complaint. *See generally* ECF 21.

² To survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"Factual allegations must be enough to raise a right to relief above the speculative level" and sufficient to state a claim for relief that is plausible on its face. *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

Mr. Quisenberry is now asserting individual-capacity claims against Mr. Ridge, so they are not barred by sovereign immunity. And while Mr. Ridge argues that they should still be dismissed because he is entitled to qualified immunity, the Court finds that this argument is too fact bound to resolve at the motion-to-dismiss stage. As for Judge Emery, she is entitled to absolute judicial immunity from the claims against her because in allegedly "pre-signing" arrest warrants, she was still performing a judicial act within her subject-matter jurisdiction.

## **DISCUSSION & ANALYSIS**[3]

### I. **The individual-capacity claims against Mr. Ridge survive.**

Despite Mr. Quisenberry's recent amendment, Mr. Ridge argues that Mr. Quisenberry is still bringing claims against him in his official capacity. ECF 23, pp. 4-6. That's because, according to him, Mr. Quisenberry "has fallen short in averring factual allegations that actually support a claim against Mr. Ridge in [his individual] capacity." *Id.* at p. 4. The Court disagrees.

In determining whether Mr. Quisenberry has sued Mr. Ridge in his individual capacity, the Court must "first look to the complaint[] and the course of proceedings." *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (cleaned up). Just because a public official acted under the color of law does not necessarily mean that he was sued in his official capacity. *Id.* at 636. "Indeed, the distinction between an official-capacity suit and a personal-capacity suit turns not on the capacity in which the state officer acted, but on the capacity in which the officer was sued." *Hammonds v. Aigeldinger*, No.

---

[3] Because the Court writes here to benefit the parties, it presumes they are familiar with the facts and allegations in the second amended complaint, and thus will not re-state all of them. The Court, of course, accepts as true all properly pled allegations and reasonable inferences from those allegations. "But '[t]he court is not required to draw unreasonable inferences' from the facts." *Minnich v. Ne. Sch. Dist.*, No. 20-378, 2021 WL 3166013, at *3 (M.D. Pa. July 27, 2021) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).

20-657, 2021 WL 3022633, at *4 (M.D. Pa. July 16, 2021) (citing *Hafer v. Melo*, 502 U.S. 21, 27 (1991)).

The Court's analysis is directed by several guideposts that have developed in the case law. For instance, "[c]ourts have found individual capacity claims where the plaintiff sued the official only and not the state." *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *4 (W.D. Pa. Sept. 30, 2021) (Hardy, J.) (citations omitted). Similarly, "a request for punitive damages is indicative of an individual capacity suit because state officials may not be sued for punitive damages in their official capacities." *Hammonds*, 2021 WL 3022633, at *5 (citations omitted). "A defendant's assertion of a personal immunity defense, too, tends to demonstrate that the suit was an individual capacity one." *Id.* (citations omitted). On the flip side, an allegation that the official "acted in accordance with a governmental policy or custom" suggests that the official is sued in their official capacity. *See Stief v. Robeson Twp.*, No. 20-6272, 2021 WL 2137588, at *5 (E.D. Pa. May 26, 2021) (cleaned up).

A careful review of the allegations in the second amended complaint reveals that Mr. Quisenberry has sued Mr. Ridge in his individual capacity. For starters, Mr. Quisenberry says that he is bringing claims against Mr. Ridge in his individual capacity. ECF 21, ¶ 8 ("Defendant Ridge is sued in his individual capacity in the instant action."). While not dispositive, such clarity helps put a defendant on notice that "his or her personal assets are at stake." *Melo*, 912 F.2d at 636, n.7. But that's not the only indicator that Mr. Quisenberry is pursuing individual-capacity claims. He also pled a claim for punitive damages. ECF 21, p. 8 (requesting that "Plaintiff is to be awarded punitive damages as permitted by applicable law"). And he elected to forgo claims against the Commonwealth. ECF 29, p. 7 ("Plaintiff has not sued the state."); *see also Atwell v. Schweiker*, 274 F. App'x 116, 118 (3d Cir. 2007) (concluding that plaintiff brought individual-capacity claims where plaintiff "has not sued the Commonwealth of Pennsylvania, and he seeks punitive damages"); *Kist v. Fatula*, No.

06-67, 2007 WL 2404721, at *21 (W.D. Pa. Aug. 17, 2007) (Gibson, J.) ("Kist has been very specific in his Amended Complaint that he is seeking damages from Fatula personally; he has not asked for anything from Jackson Township. Fatula is certainly on notice that Kist is trying to go after his personal assets." (citations omitted)). While none of these considerations on their own may sufficiently indicate individual-capacity claims, taken together they do.

Mr. Ridge disagrees and argues that these "passing reference[s]" to individual liability are not enough because "it is quite clear that Mr. Quisenberry's grievances are tied to official actions taken by Mr. Ridge" and that his actions "fell within the scope of his duties as Chief Adult Probation and Parole Officer." ECF 23, p. 5. In essence, Mr. Ridge argues that because he was allegedly acting "under color of state law" according to the authority afforded to him by his position, this must be an official-capacity suit. Not so. "It does not follow that every time a public official acts under color of state law, the suit must of necessity be one against the official in his or her official capacity." *Melo*, 912 F.2d at 636 (citation omitted). The reason being that acting under color of state law is just "a prerequisite to a successful section 1983 suit." *Id.* Thus, if such an allegation foreclosed the possibility of an individual-capacity claim, there could only be official-capacity claims in the section 1983 context. That is simply not the case.

Perhaps recognizing that fact, in his reply, Mr. Ridge pivots to arguing that the case turns on Mr. Ridge "implementing what amounted to an official policy" and "practice" when issuing pre-signed arrest warrants. ECF 31, p. 3 (cleaned up). While it is true that following an official **governmental** policy or custom would point to an official-capacity claim, that is not what Mr. Quisenberry has alleged in the second amended complaint. He instead alleges that Mr. Ridge, personally, makes "it a practice to regularly utilize blank, 'pre-signed' warrants to effectuate the later arrest of certain individuals accused of bond violations." ECF 21, ¶ 29. That is different

- 5 -

from an allegation that Mr. Ridge follows an established policy by the Washington County Adult Probation and Parole Department about the use of pre-signed warrants.[4]

Thus, taking all the relevant considerations into account, the Court finds that Mr. Quisenberry is bringing individual-capacity claims against Mr. Ridge.

One other thing. Because these are individual-capacity claims, Mr. Ridge argues that the claims should then be dismissed because he "is entitled to qualified immunity." ECF 23, p. 6. The Third Circuit has cautioned, however, that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). The Court will heed this warning here. Even Mr. Ridge acknowledges that his qualified-immunity defense is fact-dependent because he "requests that the Court take judicial notice of particular facts which definitively demonstrate that he did not violate Mr. Quisenberry's statutory or, more importantly, constitutional rights[.]" ECF 23, p. 6. The Court will not wade into these facts right now, most of which are based on information outside the second amended complaint. Mr. Ridge may develop the record as he sees fit through discovery and then can raise his qualified-immunity defense at a later stage.

Mr. Ridge's motion to dismiss is denied.

---

[4] To be clear, Mr. Quisenberry claims that it is "possible" that Mr. Ridge's practice is more widespread and used by "other agents of the Washington County Adult Probation and Parole Department" and "other Washington County Judges." ECF 21, ¶ 35. But Mr. Quisenberry isn't sure and admits that discovery is needed to resolve the question. *Id.* But even if this allegation were part of Mr. Quisenberry's claim now, that would, at most, suggest that "both an individual-capacity suit and an official capacity suit are reasonably read" and "courts in this circuit have held at the motion to dismiss stage that defendants were sued in both capacities." *Hammonds,* 2021 WL 3022633, at*5 (collecting cases).

## II. Judge Emery is entitled to judicial immunity.

"[S]tate judges are absolutely immune from liability for their judicial acts[.]" *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983) (citation omitted). This immunity can only be overcome by a showing that the judge's act was "nonjudicial," or that the judge acted "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Even construing the allegations in Mr. Quisenberry's second amended complaint in his favor, as the Court must, neither of these circumstances is present here.

First, "the issuance of a warrant is unquestionably a judicial act[.]" *Burns v. Reed*, 500 U.S. 478, 479 (1991). "An act is judicial if (1) it is a function normally performed by a judge; and (2) the parties dealt with the judge in his judicial capacity." *Malhan v. Katz*, 830 F. App'x 369, 371 (3d Cir. 2020) (cleaned up). "Signing a warrant is a function normally performed by a judge," and Mr. Quisenberry's limited dealings with Judge Emery occurred while she was acting within her judicial capacity. *See Creech v. Pater*, 701 F. App'x 456, 460 (6th Cir. 2017); *see also Wolchesky v. Beckenstein*, No. 15-1721, 2015 WL 2250485, at *5 (D.N.J. May 13, 2015) ("[J]udicial immunity specifically applies to judicial errors in issuing warrants[.]" (citations omitted)).

To get around these well-established principles, Mr. Quisenberry argues that this case is different because it does not involve the mere signing of an arrest warrant. ECF 30, p. 8. Instead, it involves "a situation where a judge pre-signs blank warrants not directed to any particular person or any particular case," and no party "would have the expectation that a judge would" engage in such conduct and "allow those warrants to later be issued by a non-judge to effectuate arrests at his or her discretion." *Id.* But Mr. Quisenberry frames this expectation too narrowly given the "comparatively sweeping form of immunity" applicable to judicial acts. *Mendoza v. Larotonda*, 270 F. App'x 157, 159 (3d Cir. 2008). More generally, parties ***do*** expect a

judge to sign arrest warrants, and allegations that such an action was "in error" or "undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity." *Jarvis v. Gliottone*, No. 14-7766, 2015 WL 4715604, at *2, n.2 (D.N.J. Aug. 7, 2015) (citing *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 769 (3d Cir. 2005) and *Forrester v. White*, 484 U.S. 219, 227 (1988)). The Court therefore does not agree with Mr. Quisenberry's attempt to reframe Judge Emery's actions as "nonjudicial."

Second, Judge Emery acted within her jurisdiction in signing the arrest warrant. "The limitation on judicial immunity applies not to improper exercises of jurisdiction, or even to conduct taken in 'excess of jurisdiction,' but only to conduct taken categorically without jurisdiction[.]" *Creech*, 701 F. App'x at 460 (cleaned up). "Generally, therefore, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (cleaned up). An example of an act taken categorically without subject-matter jurisdiction would be if a "probate judge, with jurisdiction over only wills and estates, should try a criminal case[.]" *Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978). As a counter example, "if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." *Id.* In essence, "where jurisdiction over the subject-matter is invested by the law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case[.]" *Id.* at 356 n.6.

Mr. Quisenberry argues that Judge Emery acted without subject-matter jurisdiction in "signing a blank arrest warrant for use at the discretion of [Mr. Ridge]" because "a blank warrant (not issued in a particular case and not naming a specific individual) could be used to arrest *any person*, and identifies no individual or case for

the judge to exercise jurisdiction over." ECF 30, p. 7 (emphasis in original). But that is not quite right. Judge Emery did not act without any subject-matter jurisdiction because she had the authority to issue arrest warrants from Washington County, under Pennsylvania law. *See, e.g.*, 42 Pa. C.S.A. § 912; *In re Lackawanna Cnty.*, 654 Pa. 1, 23 (Pa. 2019) ("As we have explained, all common pleas court judges in this Commonwealth inherently possess the power to issue … warrants"). And her authority is not triggered by the subject of the warrant or the circumstances supporting its issuance. She can make an egregious procedural error in signing that warrant and still be entitled to judicial immunity from a suit for money damages. *See Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 769 (3d Cir. 2000) ("Immunity will not be forfeited because a judge has committed grave procedural errors[.]" (cleaned up)).

That is not to say that Judge Emery could never act without jurisdiction in signing an arrest warrant. For example, if she signed an arrest warrant for a court in another state, she would be acting without jurisdiction. A judge in the Court of Common Pleas of Washington County lacks the authority to sign warrants for courts, say, in Ohio. But that's not the fact pattern pled here.

Mr. Quisenberry does not allege or argue in his briefing that the warrant was not a Washington County arrest warrant. And although no party provided to this Court a copy of the actual warrant at the center of this dispute, the only reasonable inference that can be drawn from the facts pled in the second amended complaint is that it was a Washington County arrest warrant. *See Saterstad v. Derry Twp.*, No. 20-765, 2021 WL 199375, at *3 (M.D. Pa. Jan. 20, 2021) ("The court need not… draw unreasonable inferences from the facts." (citation omitted)). Judge Emery is a Washington County judge (ECF 21, ¶ 11), and Mr. Ridge is a Washington County probation and parole officer (*id.* at ¶ 9). Mr. Quisenberry is a resident of Canonsburg, Pennsylvania (*id.* at ¶ 6), which is in Washington County, and was ultimately arrested in Peters Township, Pennsylvania (*id.* at ¶ 21), which is also in Washington

County. Mr. Quisenberry later contested the validity of the warrant during the pretrial phase of his criminal case that was pending in the Court of Common Pleas of Washington County. *Id.* at ¶¶ 21-27. Literally every key event here happened in Washington County. There is simply no basis to reasonably conclude that Judge Emery "pre-signed" anything besides a Washington County warrant.

Based on that conclusion, at most, Mr. Quisenberry has alleged facts establishing that Judge Emery's signing of these "blank" warrants exceeded her jurisdiction since, when they were signed, the warrants lacked probable cause and could have been used against someone clearly outside the scope of her judicial reach, like a resident of another state. But that fails to overcome judicial immunity. Even if Judge Emery likely "issued the arrest warrant … in excess of [her] authority," she "is still entitled to judicial immunity." *Dennis v. Evans*, No. 09-0656, 2011 WL 900911, at *12 (M.D. Pa. Feb. 2, 2011), *report and recommendation adopted,* No. 09-656, 2011 WL 901187 (M.D. Pa. Mar. 14, 2011). Again, the key question is not whether she exceeded her authority, but whether she had any authority to perform the alleged act. She did under Pennsylvania law. And this Court's "analysis must focus on the general nature of the challenged action, without inquiry into such specifics as the judge's motive or the correctness of his or her decision." *Gallas*, 211 F.3d at 769.

With the appropriate standard in mind, under the facts pled here, Judge Emery is entitled to judicial immunity. *See, e.g.*, *Creech*, 701 F. App'x at 459 ("Judicial immunity independently bars the claim that Judge Pater violated Creech's substantive due process rights because when Judge Pater retroactively signed the command page of the warrant, he did so in his judicial capacity and within his jurisdiction."); *Lee v. Emps. of Union Twp. Mun. Ct.*, No. 17-4229, 2018 WL 1535266, at *4 (D.N.J. Mar. 28, 2018) ("The warrant for Ms. Lee's arrest was issued by the judge in the judge's official capacity. The judge therefore is entitled

to judicial immunity."); *Dennis*, 2011 WL 900911, at *12  ("[T]he court finds as a Magisterial District Judge, defendant Whittaker clearly had jurisdiction to issue an arrest warrant for the plaintiff.").

*   *   *

For these reasons, this **6th day of May, 2022,** it is hereby **ORDERED** that Mr. Ridge's motion to dismiss (ECF 22) is **DENIED** without prejudice to Mr. Ridge raising his qualified-immunity defense at a later stage of the case; and Judge Emery's motion to dismiss (ECF 25) is **GRANTED** and all claims against her are dismissed with prejudice and she is hereby terminated as a Defendant in this case.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge