IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES CARLOS QUISENBERRY,<br><br>        Plaintiff,<br><br>    v.<br><br>JON T. RIDGE, Washington County Chief Adult Probation and Parole Officer,<br><br>        Defendant. | 2:20-cv-1824-NR |

## MEMORANDUM OPINION

Plaintiff James Carlos Quisenberry was arrested and charged with various counts of harassment, terroristic threats, and stalking, following incidents involving his former girlfriend, Judge Valarie Costanzo of the Court of Common Pleas of Washington County. The state court permitted Mr. Quisenberry to post bond on those charges while awaiting trial. One condition of his release was that he would remain clear of certain "exclusion zones," including a zone that encompassed a two-mile radius surrounding Judge Costanzo's residence.

When Mr. Quisenberry violated this condition, Defendant Jon Ridge, the Chief Adult Probation and Parole Officer for Washington County, "released" a warrant that had been "pre-signed" by Judge Katherine Emery of the Court of Common Pleas of Washington County. ECF 21, ¶¶ 21, 26. According to Mr. Quisenberry, the use of this warrant violated his Fourth Amendment rights because it caused him to be arrested without a judicial finding of probable cause. *Id.* ¶¶ 27-30. He sues for compensatory and punitive damages under 42 U.S.C. § 1983.

Mr. Quisenberry's claim fails, however, because Mr. Ridge is entitled to quasi-judicial immunity. Issuing warrants is an essential judicial function. In this case, Washington County had a peculiar procedure that allowed Mr. Ridge, instead of a

judge, to decide whether to issue a warrant for arrest for certain offenders suspected of violating a condition of their release. Whether appropriate or not, Mr. Ridge was acting in an adjudicatory fashion at the directive of Judge Emery's procedure when he decided to release the pre-signed warrant for Mr. Quisenberry's arrest. As a result, the Court will grant Mr. Ridge's pending motion for summary judgment.[1]

## BACKGROUND

**I. Development of Washington County's practice of using pre-signed warrants.**

Judge Emery developed the "process" and "procedure" of having pre-signed warrants for certain offenders in 2018. ECF 69-4, 7:10-8:11. This procedure was only reserved for "Tier 3" offenders—individuals charged with or convicted of serious incidents of domestic violence—who, while out on bond or on probation, were required to wear "Buddi Clips," which is a type of tracking and monitoring device. *Id.* Judge Emery developed the procedure after two victims of domestic violence were murdered by such offenders. *Id.* at 14:14-21.

When the procedure applied, Judge Emery would sign warrants that contained the specific case caption and the offender's name, address, and physical characteristics. *Id.* at 7:13-23, 9:2-9. The warrants would then be filed in a "special

---

[1] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). The moving party bears the initial burden to show the lack of a genuine dispute of material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper. *Id.* (cleaned up).

drawer" at the Adult Probation Office, only to be used "in the middle of the night or [during] some [] emergency kind of situation." *Id.* at 8:3-11.

## II.     The conditions of Mr. Quisenberry's release.

Mr. Quisenberry was a Tier 3 offender. He was charged with harassment, terroristic threats, and stalking his former paramour, Judge Costanzo. ECF 69-7. Because a sitting judge was the victim, other members of the bench from the same court recused themselves from overseeing his case, and it was assigned to a visiting judge—Senior Judge Gerald Solomon of the Court of Common Pleas of Fayette County. ECF 69-8, 6:17-20, 16:19-22.

There is a long procedural history for Mr. Quisenberry's offense against Judge Costanzo and another offense over which Judge Solomon presided, but most of it is irrelevant.

The relevant history is that just before his bond violation that is the triggering event for the claim here, Mr. Quisenberry signed a "Buddi Clip" agreement that established the "rules and regulations" with which he was to comply. ECF 69-19. Most notably, Mr. Quisenberry agreed that he would "not travel to any prohibited locations listed on [his] conditions of release or court order." *Id.* These locations were called "exclusion zones," and included an "as the crow flies" two-mile radius around Judge Costanzo's home in the Southpointe area. ECF 69-5, 22:24-24:25; ECF 69-9, 117:5-8. That radius encompassed the I-79 interchange at Southpointe. ECF 69-5, 22:24-24:25.[2]

## III.    Mr. Quisenberry's violation and arrest.

The violation that led to Mr. Quisenberry's arrest was his use of the I-79

---

[2] The parties agree on these general facts but disagree about whether an exception to the exclusion zone was made for that interchange. Mr. Ridge vehemently maintains no such exception was made, while Mr. Quisenberry says otherwise. For purposes of the motion, the Court assumes Mr. Quisenberry is right; but whether the exception was made is immaterial, as explained below.

interchange on the evening of August 10, 2019. ECF 69-21. When he used the interchange, a monitoring device provided to Judge Costanzo and associated with Mr. Quisenberry's Buddi clip alerted her to the breach and prompted her to call Mr. Ridge. ECF 69-5, 12:14-13:1. Mr. Ridge then contacted a probation office employee, who confirmed the breach of the exclusion zone. *Id.* at 13:2-7.

Mr. Ridge was deejaying a wedding when he received the call from Judge Costanzo. *Id.* at 27:8-10. Coincidentally, Judge Emery was also a guest at the wedding. ECF 69-4, 10:8-10. Judge Emery testified that Mr. Ridge informed her that Mr. Quisenberry had violated the conditions of his bond by entering the exclusion zone. *Id.* at 10:11-15. She told Mr. Ridge to "call Judge Solomon" because he was assigned to the case. *Id.* She also understood that Judge Solomon would make the "final decision" on the matter. *Id.* at 11:18-21.

Mr. Ridge then called Judge Solomon and advised Judge Solomon of Mr. Quisenberry's breach. ECF 69-8, 7:2-10:6. Judge Solomon's initial response was to advise Mr. Ridge "to see if he could make contact with a judge over there to get a bench warrant signed[.]" *Id.* at 10:11-16. Mr. Ridge then informed him "that there were already bench warrants signed by the presiding judge and that was their practice and procedure in Washington County to have these forms available for such circumstances[.]" *Id.* at 10:16-20. Judge Solomon testified that he did not issue the warrant (*id.* at 10:21-23), did not make a determination of probable cause (*id.* at 13:8-10), and did not give permission to arrest Mr. Quisenberry (*id.* at 13:15-17). What he said was that if "that's your practice in Washington County and you have a bench warrant, then you should act upon it." *Id.* at 14:20-15:4.

After this call, Mr. Ridge exercised his discretion to "release" the pre-signed warrant. ECF 69-22, 4:22-25, 5:24-6:2; ECF 69-5, 25:24-26:2. Pursuant to that warrant, probation officers arrested Mr. Quisenberry.

## DISCUSSION & ANALYSIS

There are two types of immunity under § 1983: qualified immunity and absolute immunity. *Yarris v. Delaware*, 465 F.3d 129, 135 (3d Cir. 2006). One type of absolute immunity is judicial immunity. *Quisenberry v. Ridge*, No. 20-1824, 2022 WL 1443750, at *3 (W.D. Pa. May 6, 2022) (Ranjan, J.). But that immunity is not limited solely to judges. *Thompson v. Burke,* 556 F.2d 231, 236-38 (3d Cir.1977). "When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (cleaned up).

With these core principles in mind, the Third Circuit has stated that probation officers, like Mr. Ridge, are entitled to quasi-judicial immunity "when engaged in adjudicatory duties." *Thompson*, 556 F.2d at 236. "The key consideration, then, in determining whether" Mr. Ridge is "immune from [Mr. Quisenberry's] suit for damages is whether or not [his] actions occurred when [he was] engaged in adjudicatory duties." *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986) (cleaned up). Adjudicatory duties are those that are an "integral part of the judicial process." *Thompson*, 556 F.2d at 237 (cleaned up). Probation officers, like Mr. Ridge, can wear several hats, though, and when they are acting in their "executive, administrative, or ministerial capacity, they may be entitled to only qualified immunity." *Sample v. Johnson*, No. 21-1301, 2023 WL 2649458, at *4 (W.D. Pa. Mar. 27, 2023) (Dodge, M.J.). But here, Mr. Ridge was clearly engaged in adjudicatory duties when committing the conduct that gives rise to Mr. Quisenberry's claim.

Mr. Quisenberry has a very specific claim here; he claims that the issuance of a pre-signed warrant, without probable cause, violated his Fourth Amendment rights. ECF 70, p. 9. That is, he says that Mr. Ridge issued or "released" a "pre-signed arrest warrant" but no judge had made a specific probable-cause

determination, which "entirely eliminate[d] the well-established protections of the Fourth Amendment." *Id.* at 10. Mr. Ridge did exactly as Mr. Quisenberry claims, but that means that he is immune from suit.

Judge Emery established the procedure of having pre-signed warrants for Tier 3 offenders, like Mr. Quisenberry. ECF 69-4, 7:10-8:11. As part of that procedure, Judge Emery testified that Mr. Ridge had discretion to release the pre-signed warrant if those offenders violated a condition of their release. *Id.* at 10:19-22, 11:21-12:1. In her own words: "I signed these warrants, they would go into the probation office special file in a special drawer that only would be accessed if this problem had arisen. And if it—in the middle of the night or some emergency kind of situation, they could use this document to detain one of those individuals who were in this special program." *Id.* at 8:4-11. Mr. Ridge confirmed that his understanding of the procedure matched Judge Emery's description. He testified that he could make the "decision" to detain "tier threes" in violation of bail and that the decision was entirely within his "discretion" and "not within the Judge's discretion." ECF 69-22, 10:21-11:7.

Under this procedure, Mr. Ridge testified that he made the decision to release the pre-signed warrant for Mr. Quisenberry after he entered the exclusion zone. *Id.* at 4:22-25, 5:24-6:2; ECF 69-5, 25:24-26:2 ("I said okay, call house arrest and have them call Peters Township Police and have them go pick him up, fax them the warrant."). And as Mr. Quisenberry thoroughly detailed in his brief in opposition to Mr. Ridge's motion, "no judge made a finding of probable cause before the warrant was used to effectuate [Mr. Quisenberry's] arrest." ECF 70, pp. 4-6. In fact, Judge Solomon, who presided over the case, expressly disclaimed the warrant: "[i]t was not my warrant." ECF 69-8, 13:17. This testimony, then, confirms that Mr. Ridge, acting in accordance with Judge Emery's procedure, exercised the discretion afforded to him in deciding to issue the arrest warrant.

"[T]he issuance of a warrant is unquestionably a judicial act[.]" *Burns v. Reed*, 500 U.S. 478, 479 (1991). That's because the issuance of warrants is "intimately associated with the judicial phase of the criminal process and adjudicatory in nature." *Dent v. Morris*, No. 22-756, 2022 WL 866849, at \*9 (E.D. Pa. Mar. 23, 2022) (cleaned up). So, by extension, Mr. Ridge was acting in an adjudicatory capacity when he released the pre-signed warrant, and he is entitled to absolute immunity. *Id.* (dismissing § 1983 claims where plaintiff "challenge[d] the conduct of parole agents…for issuing an arrest warrant for violation of the terms of his parole").

To avoid this result, Mr. Quisenberry counters that quasi-judicial immunity applies only when probation officers "act pursuant to a court directive," and "there was no such directive in this case." ECF 74, p. 2. But there was indisputably a court directive here. Judge Emery issued a directive to Mr. Ridge when she established the procedure for releasing pre-signed warrants for Tier 3 offenders in the discretion of the supervising probation officer. And Judge Solomon furthered that directive in advising Mr. Ridge to "act upon" the pre-signed warrant procedure. By "exercis[ing] a discretionary judgment" under the pre-signed warrant procedure, Mr. Ridge was acting in a manner that was "functionally comparable" to a judge. *Antoine*, 508 U.S. at 436 (citation omitted).

In a way, Mr. Quisenberry's claim against Mr. Ridge was doomed from the start. In his complaint, Mr. Quisenberry claimed that Judge Emery established "a practice to regularly utilize blank, 'pre-signed' warrants to effectuate the later arrest of certain individuals accused of bond violations." ECF 21, ¶ 29. Under that practice, Mr. Ridge "had the discretion to release 'pre-signed' arrest warrants with no involvement or discretion exercised by a Judge." *Id.* ¶ 27. Discovery only confirmed what Mr. Quisenberry always believed to be true—unfortunately for him, that means that Mr. Ridge is entitled to absolute immunity from this suit. *Dent*, 2022 WL 866849, at \*9; *cf. Schutzeus v. Pa. Bd. of Prob. & Parole*, No. 17-412, 2020 WL

- 7 -

1911463, at *13 n.3 (W.D. Pa. Apr. 20, 2020) (Ranjan, J.) (granting summary judgment where plaintiff's theory was that "the trial court improperly delegated to [the defendant, a probation officer,] the duty of coming up with the terms of probation" because that was "clearly a quasi-judicial, adjudicatory function" and absolute immunity applied), *aff'd*, No. 20-2031, 2022 WL 58541 (3d Cir. Jan. 6, 2022).

Finally, the Court notes that any factual dispute over whether Mr. Ridge "authorized" Mr. Quisenberry to utilize the I-79 interchange without violating the exclusion zone is immaterial. It doesn't matter for the present analysis that the factual underpinnings of the arrest might be false. Mr. Quisenberry doesn't bring a claim for any type of false arrest or for Mr. Ridge making false statements or erroneous findings about the trigger for the warrant. Rather, his claim is singularly focused on the function of issuing a warrant without a case-specific finding of probable cause. For that claim, Mr. Ridge is immune.

*   *   *

For these reasons, this **7th day of December, 2023,** it is hereby **ORDERED** that Mr. Ridge's motion for summary judgment (ECF 67) is **GRANTED**, and, by separate order, the Court will enter final judgment in Mr. Ridge's favor.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge